IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:23-CV-31-FL

| | | |
|---|---|---|
| CHRISTINE HUTTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| SPECIALIZED LOAN SERVICING; FAY | ) | |
| SERVICING; and FEDERAL HOME | ) | |
| LOAN MORTGAGE CORPORATION | ) | |
| (FREDDIE MAC), | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court upon motion to dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(4), and 12(b)(6) by defendant Specialized Loan Servicing ("SLS") (DE

6), and upon motions to dismiss pursuant to Rule 12(b)(6) by defendants Fay Servicing ("Fay")

and Federal Home Loan Mortgage Corporation ("Freddie Mac") (DE 23, DE 37). Also pending

are plaintiff's motions for remand (DE 16), for summary judgment (DE 27), for oral argument (DE

47), and to amend (DE 52). The issues raised have been briefed fully and in this posture are ripe

for ruling. For the following reasons, the court grants in part defendant SLS's motion as it pertains

to plaintiff's federal claims and terminates defendants' motions as moot in remaining part. The

---

[1]     Plaintiff specifies the names of defendants in her complaint as indicated here in the court's caption.
Defendants assert in their motions that "Specialized Loan Servicing, LLC," and "Fay Servicing, LLC," are the correct
complete names for those defendants. (See, e.g., Def. SLS's Mem. (DE 7) at 8; Def. Fay Mem. (DE 24) at 1 n.1). At
this juncture, where the court determines herein that plaintiff fails to state a claim upon which relief can be granted,
pursuant to Rule 12(b)(6), the court does not undertake a correction of the caption of the case on the court's docket
based upon assertions by defendants in their motions.

court denies plaintiff's motions to remand, to amend, and for oral argument, and it terminates as moot her motion for summary judgment.

## STATEMENT OF THE CASE

Plaintiff, proceeding pro se, commenced this action arising out of servicing and modification of a mortgage loan (the "loan") on March 27, 2023, in the Superior Court of Dare County, North Carolina. Plaintiff asserts claims against defendants, who are alleged to be involved with the loan, based upon: 1) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("RESPA") by defendant SLS, 2) breach of contract by defendant SLS, and 3) violations of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq. ("UDTPA") by all defendants. Plaintiff seeks injunctive relief, compensatory and statutory trebled damages, as well as an award of legal fees and costs.

Defendant SLS removed to this court April 28, 2023, alleging federal question jurisdiction and diversity jurisdiction under 28 U.S.C. §§ 1331, 1332, 1367(a), 1441, and 1446. Defendant SLS then filed the instant motion to dismiss, on the basis of lack of subject matter jurisdiction, insufficient process, and failure to state a claim, relying upon documents related to the modification of plaintiff's loan. Plaintiff filed the instant motion to remand shortly thereafter. The court entered a text order May 16, 2023, staying the parties' scheduling conference activities pending the court's decision on those motions.

Defendant Fay filed its instant motion to dismiss for failure to state a claim, and defendant Freddie Mac seeks dismissal on the same basis. Plaintiff responded in opposition to defendants' motions, and thereafter filed the instant motions for summary judgment, for oral argument, and to amend the complaint.

2

In the meantime, on September 25, 2023, the court directed defendant Fay to file a notice providing information about the citizenship of all its members. Defendant Fay responded to the court's order September 28, 2023.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff resides at 53828 NC Hwy 12, Frisco, North Carolina 27936 (plaintiff's "home"). (Compl. (DE 1-1) ¶ 1). Plaintiff alleges that the home is subject of a deed of trust and loan note recorded in Dare County, North Carolina and plaintiff allegedly is "current" on her loan payments. (Id.).

Defendant SLS was the "servicer" on plaintiff's loan from July 2019 to January 21, 2021. (Id. ¶ 2). In August 2019, plaintiff applied for a "loan modification" from defendant SLS. (Id. ¶ 3). Plaintiff alleges that defendant SLS "began running a loan modification scam claiming that plaintiff had not filed requisite documents needed for the processing of the loan." (Id.). Plaintiff "was approved for a Freddie Mac Flex Modification" in December 2019, and a "notice was received from [defendant] SLS along with . . . 3 trial period payments [sic] instructions" specifying payments of $1,531.74 to be paid in January 2020, February 2020, and March 2020. (Id. ¶¶ 3, 6). In response to the notice, "[p]laintiff notified [defendant] SLS, in Dec[ember] 2019, that a deliberate error had been made in the calculation of the escrow amount[.]" (Id. ¶ 4).

According to plaintiff, "the escrow had been deliberately miscalculated $200.00 less than the actual escrow, which caused the percentage decrease in loan payment and the percentage mortgage payment to income, per the Freddie Mac Flex Modification's [G]uidelines to be miscalculated higher than the loan payment Plaintiff was entitled to." (Id.). In addition, defendant SLS refused "to correct their miscalculation." (Id. ¶ 5).

Plaintiff "reluctantly accept the miscalculated modification" and "made all three . . . trial period payments of $1,531.74 on time" for January 2020, February 2020, and March 2020. (Id. ¶ 6). During the last week of March 2020, "[defendant] SLS sent plaintiff the final modification documents without a correction to the modification calculation." (Id. ¶ 7). Plaintiff allegedly responded to defendant SLS March 29, 2020, by registered receipt mail, "advising them the modification amounts were still in miscalculation and a description of the math errors [defendant SLS] had made." (Id.). On April 6, 2020, plaintiff allegedly "signed the miscalculated modification documents" in order to meet the April 10 deadline set by defendant SLS. (Id. ¶ 9). As of April 6, 2020, Plaintiff had received "no word from [defendant] SLS about the miscalculation." (Id.). Defendant SLS contacted plaintiff April 13, 2020, "asking for more time to investigate the miscalculation of the modification[.]" (Id.).

In December 2020, "Freddie Mac sold plaintiff's loan to [non-party] U.S. Bank." (Id. ¶ 15). Defendant Fay notified plaintiff January 2021 that defendant Fay was "the loan's new servicer." (Id.). Plaintiff told defendant Fay of alleged issues regarding the loan and the underlying deed of trust. (Id. ¶ 16). Defendant Fay still requested payment on the loan. (Id. ¶ 19). Plaintiff alleges that defendant Fay purported "to be experts" in the loan and conveyed to plaintiff that the underlying deed of trust was enforceable. (Id.). As a result, plaintiff made payments on a loan that plaintiff alleges to be "fraudulent" and "imperfected." (Id.).

**COURT'S DISCUSSION**

A.    Subject Matter Jurisdiction

Where an issue with "subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), may be raised by . . . a court on its own initiative, at any stage in the litigation," Arbaugh v. Y&H Corp.,

4

546 U.S. 500, 506 (2006),[2] the court turns first to examining its subject matter jurisdiction. In addition, plaintiff raises an issue concerning the court's jurisdiction in her motion to remand. For the following reasons, the court determines that it has federal question jurisdiction over this case and that plaintiff's motion to remand accordingly must be denied. However, contrary to the assertions in defendant SLS's notice of removal and the suggestions in defendant Fay's response to the court's September 25, 2023, order, the court lacks diversity jurisdiction over the instant case, thus obligating the court to consider further herein its supplemental jurisdiction over plaintiff's state law claims.

1.      Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[I]t is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." Id.; see also Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

2.      Analysis

a.      Federal Question Jurisdiction

---

[2] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Under the federal removal statute, "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A federal district court's federal question jurisdiction comprises "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] case arises under federal law when federal law creates the cause of action asserted." Gunn v. Minton, 568 U.S. 251, 257 (2013).

Here, plaintiff asserts violations of RESPA, 12 U.S.C. §§ 2601, et seq., by defendant SLS in her complaint: 1) "Per the federal RESPA Act, by law, [defendant] SLS is required to apply the loan owners modification guideline . . . . [defendant] SLS violated the RESPA Act in their application of the Freddie Mac Flex Modification [G]uidelines" (Compl. (DE 1-1) ¶ 5); and 2) "Plaintiff by the RESPA Act and by law is owed the current miscalculated modification amount to be corrected per the Freddie Mac Flex Modification Guidelines from 2019[.]" (Id. ¶ 14). Therefore, the court has federal question jurisdiction over this case, and plaintiff's motion to remand is denied on this basis.

b.    Diversity Jurisdiction

In its notice of removal, defendant SLS invokes the court's diversity jurisdiction in addition to federal question jurisdiction. This court has diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different [s]tates[.]" 28 U.S.C. § 1332(a)(1). "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). "For purposes of diversity jurisdiction, the citizenship of

6

a limited liability company . . . is determined by the citizenship of all of its members[.]"  Id.; see also Capps v. Newmark S. Region, LLC, 53 F.4th 299, 302 (4th Cir. 2022) ("Because Newmark is an LLC, wholly owned by another LLC, wholly owned by a limited partnership, a partner of which is another limited partnership, we necessarily trace Newmark's citizenship through these layered entities.").

Plaintiff is a citizen of North Carolina.  (See Not. of Rem. (DE 1) ¶ 15).  Defendant Freddie Mac is headquartered in Tysons Corner, Virginia, (see id. ¶ 18), and so takes Virginia citizenship. See Navy Fed. Credit Union v. LTD Fin. Servs., LP, 972 F.3d 344, 350 (4th Cir. 2020) ("Congress has since plainly provided a general rule for corporate citizenship, and that text grants a federal corporation the citizenship of its principal place of business.").  As revealed by defendant Fay's response to the court's September 25 order, however, defendant Fay is an LLC wholly owned by a sole member, Fay Management, LLC, which is in turn wholly owned by another sole member, Fay Financial, LLC.  (DE 50 ¶¶ 2, 3).  While Fay Financial, LLC, has a sole member-manager, a citizen of Florida, it also has many non-manager members, including individuals that are citizens of North Carolina.  (Id. ¶¶ 3, 4).[3]  Defendant SLS is an LLC with a single member-manager, Specialized Loan Servicing Holdings, LLC, whose only member's parent is Computershare Limited, a publicly traded company.  (See Not. of Rem. (DE 1) ¶ 16).  Accordingly, due to the North Carolina citizenship of at least one member (at the grandparent level) of defendant Fay, diversity jurisdiction is lacking.

Both defendants SLS and Fay appear to suggest that although they are LLCs, they properly take the citizenship of only the members who manage the relevant entity and not the citizenship of any non-manager members.  In its notice of removal, defendant SLS asserts that "[n]one of the

---

[3]       In addition to North Carolina, members of Fay Financial, LLC, include citizens of California, Colorado, Connecticut, Florida, Illinois, Michigan, New Jersey, South Carolina, Texas, and Wisconsin.  (DE 50 ¶ 4).

member-managers or controlling interests in these companies are North Carolina entities or corporate citizens of North Carolina." (Id.). However, defendant SLS does not disclose the citizenship of its non-manager members, if any.[4] In its response to the court's September 25 order, defendant Fay asserts that "the place where the company's high-level management directs, control, and coordinates the limited liability company is Tampa, Florida." (DE 50 ¶ 3). Defendant Fay avers that Fay Financial, LLC, "has many individual members that are not managers, so they do not direct, control, or coordinate the activities of the limited liability company." (Id. ¶ 4).

Defendants' suggested reliance upon a distinction between manager-members and non-managing members, which appears to be based upon rules applicable to corporations, is not supported in the law. See Cent. W. Virginia Energy Co., 636 F.3d at 103; see also Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004) ("A limited liability company organized under the laws of a state is not a corporation and cannot be treated as such under section 1332 until Congress says otherwise."). When determining citizenship under the federal diversity statute, courts are "to treat as legal persons only incorporated groups and to assimilate all others to partnerships." Carden v. Arkoma Assocs., 494 U.S. 185, 190 (1990).

For purposes of diversity jurisdiction involving LLC parties, unlike corporations, the court must look to the citizenship of all members of the LLC. See id. at 192 ("We have never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members."); see also Americold

---

[4] Defendant SLS asserts that it has a "single member-manager, which is Specialized Loan Servicing Holdings, LLC[.]" (Not. of Rem. (DE 1) ¶ 16). It is plausible, therefore, that defendant SLS has other non-manager members, in addition to the single member-manager, Specialized Loan Servicing Holdings, LLC. If that is the case, the court would need to examine the citizenship of those non-manager members in conducting its diversity jurisdiction analysis. However, if defendant SLS has only a single member, Specialized Loan Servicing Holdings, LLC, which in turn has a single member, Computershare Limited, the analysis would require further inquiry into the corporate and operational structure of the relevant entities. See, e.g., Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 342, 353 (3d Cir. 2013). For reasons stated, the court need not reach a finding on this question because defendant Fay has at least one member who is a citizen of North Carolina.

8

Realty Tr. v. Conagra Foods, Inc., 577 U.S. 378, 381 (2016) ("For these unincorporated entities, we too have adhered to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all its members."). Further, Carden categorically rejects a method of analysis that would "look beyond the incorporated/unincorporated dichotomy and . . . study the internal organization, state law requirements, [and] management structure . . . to determine diversity of citizenship." 494 U.S. at 190 (emphasis added). "This approach of looking to the citizenship of only some of the members of the artificial entity finds even less support in our precedent than looking to the [s]tate of organization[.]" Id. at 192.

In sum, while diversity jurisdiction as asserted by defendants is lacking, the court has original jurisdiction on the basis of a federal question due to plaintiff's assertion of a claim under RESPA. Accordingly, the court denies plaintiff's motion to remand and proceeds to evaluate whether plaintiff has stated a claim under RESPA and whether the court should exercise supplemental jurisdiction over plaintiff's state law claims.

B.     Motions to Dismiss

1.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

9

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

2.      Analysis

a.      RESPA claim

Defendant SLS contends that plaintiff fails to allege sufficient facts under the pleading standard to make out a RESPA claim. The court agrees.

Congress enacted RESPA "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [real estate] settlement process[.]" 12 U.S.C. § 2601(a); see also Boulware v. Crossland Mortg. Corp., 291 F.3d 261, 267 (4th Cir. 2002) ("RESPA is a broad statute, directed against many things that increase the cost of real estate transactions[.]"). Congress sought to "effect certain changes in the settlement process" to address "the amounts home buyers are required to place in escrow accounts[.]" 12 U.S.C. § 2601(b)(3). "Escrow account means any account that a servicer establishes or controls on behalf of a borrower to pay taxes, insurance premiums (including flood insurance), or other charges with respect to a federally related mortgage loan[.]" 12 C.F.R. § 1024.17(b). RESPA has created three private rights of action, codified at §§ 2605, 2607, 2608. See 12 U.S.C. § 2614; see also Harrell v. Freedom Mortg. Corp., 976 F.3d 434, 437 (4th Cir. 2020). Congress also has authorized the Consumer Financial Protection Bureau ("CFPB") "to prescribe such rules and regulations . . . as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

1.      Deliberate Miscalculation of Escrow Amount

Plaintiff first suggests defendant SLS violated RESPA by deliberately misapplying the "Freddie Mac Flex Modification Guidelines" in calculating plaintiff's monthly mortgage payment. While plaintiff does not cite to a specific RESPA provision or accompanying CFPB regulation,

10

the court construes plaintiff's assertion as arising under the requirements of § 2609 of RESPA and the CFPB regulations at 12 C.F.R. §§ 1024.17 and 1024.41.[5] See King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) ("[P]ro se pleadings are to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").[6]

Section 2609 and its implementing regulation at 12 C.F.R. § 1024.17 limit the escrow amount that servicers can collect from borrowers both at closing of a residential loan and thereafter. See 12 U.S.C. § 2609(a); see also 12 C.F.R. § 1024.17(a) ("[Section 1024.17] sets limits for escrow accounts using calculations based on monthly payments and disbursements within a calendar year."). Plaintiff alleges that defendant SLS misstated the amount in escrow when offering to modify plaintiff's loan. Plaintiff does not contend that defendant SLS required an amount in escrow greater than that legally permissible. Rather, plaintiff contends that defendant SLS failed to account for the higher correct amount that had already been placed in escrow.

Even if plaintiff's theory implicates § 2609, plaintiff's claim cannot go forward under the provision because there is no private right of action for a violation of § 2609. See 12 U.S.C. § 2614; Harrell, 976 F.3d at 437 (4th Cir. 2020); see also Clayton v. Raleigh Fed. Sav. Bank, No. 96-1696, 1997 WL 82624, at *1 (4th Cir. Feb. 27, 1997) (stating, in the context of a § 2609 claim, that there was no "congressional intent to create a private right of action"). Further, courts that

---

[5]    The "Freddie Mac Flex Modification Guidelines" are not referenced specifically in either § 1024.41 or the rest of the CFPB Regulations. However, Freddie Mac's website provides that a Freddie Mac Flex Modification "is a loss mitigation solution designed to resolve delinquencies and help homeowners remain in their homes," which in turn appears to be linked to the loss mitigation process described under § 1024.41. Flex Modification, Freddie Mac Single-Family (October 16, 2023, 9:35 AM), https://sf.freddiemac.com/working-with-us/servicing/products-programs/freddie-mac-flex-modification [https://perma.cc/M3E5-VBCF].

[6]    The court also construed plaintiff's deliberate miscalculation theory as a claim under § 2605(g), RESPA's administration of escrow accounts provision, and its implementing regulation at 12 C.F.R. § 1024.34. However, the court quickly dispenses with that claim because a servicer's duty to refund any remaining balance in the escrow account under § 2605(g) is triggered only upon the "borrower's payment of a mortgage loan in full." 12 C.F.R. § 1024.34(b)(1) (emphasis added). Plaintiff does not contend that the loan has been fully paid off.

have considered whether § 1024.17 creates a private right of action have held the same. See, e.g., Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1360 (11th Cir. 2006) (determining that a failure to comply with 12 C.F.R. § 3500.17(o), which was later recodified at 12 C.F.R. § 1024.17, "is a violation of RESPA § 10, and RESPA explicitly states that the Secretary of Housing and Urban Development enforces violations of § 10"); see also Richards v. Servis One, Inc., No. 8:20-cv-03683, 2021 WL 3930130, at *7 (D.Md. Sept. 21, 2021) ("Courts increasingly have concluded that section 2609 and its implementing regulation do not give rise to a private right of action.").

In any event, plaintiff alleges no facts upon which to plausibly infer that defendant SLS deliberately miscalculated the escrow amount or misapplied the "Freddie Mac Flex Guidelines" in violation of RESPA. The complaint itself is devoid of specific allegations that would suggest the escrow amount was miscalculated in the first instance. Indeed, plaintiff also alleges that the final modification documents became a binding contract on April 6, 2020, and requests that the court enforce the terms of those modification documents with the supposedly miscalculated monthly mortgage payment. (See Compl. (DE 1-1) ¶¶ 11, 13). On its face, therefore, the complaint does not state a claim for a RESPA violation under the theory that defendant SLS deliberately miscalculated the escrow amount. See Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (finding that liberal construal rules for pro se complaints do not "undermine Twombly's requirement that a pleading contain more than labels and conclusions.").

Section 1024.41 of the CFPB Regulations provides rules for loss mitigation procedures. Under this regulation, "if a servicer receives a complete loss mitigation application more than [thirty-seven] days before a foreclosure sale, then, within [thirty] days of receiving the complete loss mitigation application," the servicer must "[e]valuate the borrower for all loss mitigation options . . . and [p]rovide the borrower with a notice in writing stating the servicer's determination

of which loss mitigation options, if any, it will offer to the borrower[.]" 12 C.F.R. § 1024.41(c). In this manner, the regulation "sets forth requirements for the submission, consideration, and adoption or rejection of applications for mortgage relief." Vance v. Wells Fargo Bank, 291 F.Supp.3d 769, 773 (W.D.Va. 2018). Additionally, with a few exceptions not applicable here, "a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" so long as "a borrower submits a complete loss mitigation application after a servicer has made the first notice . . . for any judicial or non-judicial foreclosure process but more than [thirty-seven] days before a foreclosure sale." 12 C.F.R. § 1024.41(g). "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). Section 1024.41 expressly creates a private right of action. See 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to [12 U.S.C. § 2605(f)].").

Here, too, plaintiff fails to allege sufficient facts to make out a violation either under § 1024.41(c) or § 1024.41(g). Plaintiff does not allege that plaintiff submitted a complete loss mitigation application more than thirty-seven days before a foreclosure sale. See 12 C.F.R. § 1024.41(g); see, e.g., Vance, 291 F.Supp.3d at 773 n.1 ("Like Section 1024.41(c), Section 1024.41(g) has a trigger condition: [a] borrower must submit a complete loss mitigation application."). Indeed, although plaintiff asserts that defendant SLS failed to properly apply the "Freddie Mac Flex Guidelines," plaintiff's complaint makes no mention of an impending foreclosure sale nor the submission of a complete loss mitigation application at any point. See 12 C.F.R. §§ 1024.41(c), (g); see, e.g., Vance, 291 F.Supp.3d at 774 ("The Vances fail to allege that the loan modification package contained a complete loss mitigation application as defined in

13

Section 1024.41(b)(1)."); see also Sharma v. Rushmore Loan Mgmt. Servs., LLC, 611 F.Supp.3d 63, 84 (D.Md. 2020) (holding that "because no completed loss mitigation action was pending, and no foreclosure action was initiated, the borrower protections at § 1024.41 [were] not implicated").[7]

Plaintiff has failed to allege sufficient facts to sustain a RESPA claim under the theory that defendant SLS deliberately misapplied the "Freddie Mac Flex Guidelines" in calculating plaintiff's escrow amount. Therefore, plaintiff's RESPA claim will rise or fall with her assertion that defendant SLS violated RESPA when defendant SLS failed to adequately address or correct the escrow error after being notified.

### 2. Failure to Correct Escrow Error

Plaintiff next suggests defendant SLS violated RESPA by failing to correct the escrow error upon plaintiff's notification. While again the complaint fails to cite to a specific RESPA provision, the court construes plaintiff's federal statutory claim on this basis as asserting a violation of § 2605 and 12 C.F.R. §§ 1024.35 and 1024.38.

Section 2605(f) creates a private cause of action for failure by "loan servicers . . . to respond to any [qualified written request] received from borrowers for information relating to the servicing of the loan." Morgan v. Caliber Home Loans, Inc., 26 F.4th 642, 648 (4th Cir. 2022). Servicers

---

[7] In filings following the complaint, plaintiff makes additional contentions concerning defendant SLS's alleged violation of RESPA. (See Resp. in Opp. to Mot. to Dismiss (DE 18) ¶ 6 ("[Defendant] SLS did deliberately miscalculate the modification in violation of the RESPA Act's directives to follow the loan owners published guidelines . . . to deny plaintiff the modification she validly qualifies for and to put her home in foreclosure.")); (see also id. ¶ 6 ("The language of these sections of the RESPA Act depict a requirement that valid applicants would be entitled to loan modification options with the purpose of preventing foreclosure and that the error resolution process would result in a correction of obvious errors in all aspects of loan servicing.")). In contesting a Rule 12(b)(6) motion, a plaintiff "cannot cure pleading deficiencies in the . . . complaint with later-filed supporting documentation." U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 458 n.8 (4th Cir. 2013). Further, while plaintiff references a foreclosure in these later filings, plaintiff does not allege a foreclosure sale nor that a complete loss mitigation application was sent to defendant SLS. Accordingly, none of the additional allegations in these later filings provide sufficient facts demonstrating a violation of § 1024.41 or any other provision of RESPA.

are required to comply with certain statutory duties upon receipt of a qualified written request ("QWR"). See 12 U.S.C. § 2605(e). A QWR is a term of art, defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Id. § 2605(e)(1)(B). Because only a narrow range of communications are QWRs, to state a claim for relief under RESPA plaintiff must plead facts illuminating the content of any correspondence sent to defendant and demonstrating that such correspondence indeed was a QWR. See Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F.Supp.2d 561, 574–75 (E.D.N.C. 2012) (requiring plaintiff prove that written correspondence was a request for information related to the servicing of the loan); see also Fedewa v. J.P. Morgan Chase Bank, Nat'l Assn'n, 921 F.Supp.2d 504, 510 (E.D.Va. 2013) (concluding that plaintiff failed to state a RESPA claim because the complaint contained "no details as to the substantive content of the request, when the requests were sent by [p]laintiffs and received by [d]efendant, or whether the form of the requests comported with the requirements of RESPA"). "[W]here a written correspondence to a loan servicer provides sufficient information to identify the account and an alleged servicing error, such correspondence is a QWR for the purpose of RESPA and [the CFPB] Regulation[s]." Morgan, 26 F.4th at 646. Section 2605(e) is not limited "to disputes of specifically identified payments but includes any [QWR] relating to a dispute regarding the borrower's payments." Id. at 649–50 (emphasis omitted).

i. Plaintiff's December 2019 Notification

Here, plaintiff has not pleaded sufficient facts regarding plaintiff's December 2019 communication to state a claim under § 2605(e). Plaintiff's complaint asserts that defendant SLS

approved plaintiff's loan modification application in December 2019 and provided plaintiff with instructions to make three trial period payments. (See Compl. (DE 1-1) ¶ 3). Thereafter, plaintiff notified defendant SLS that there was an error in the escrow amount, resulting in an allegedly incorrect monthly mortgage payment. (Id. ¶ 4). However, plaintiff does not allege whether this notification was done in writing or whether the notification "include[d] a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Without such facts, the court cannot infer that plaintiff's notification in December 2019 actually was a QWR. Accordingly, plaintiff's RESPA claim premised upon notification in December 2019 fails as a matter of law.

  ii.  Plaintiff's March 2020 Letter

  Plaintiff's assertions concerning the March 2020 letter also fail to state a claim under § 2605(e). In Morgan, the Fourth Circuit held that the district court erred in concluding that a letter sent to the loan servicer was not a QWR due to a "lack of specificity." 26 F.4th at 650. There, the court found that the letter was not "general or vague" because it included "an account number, as well as a reference to an agent and that agent's ID number related to a specific phone call" and "details [on] conflicting balance information received from [the loan servicer] and the credit reporting service." Id. Here, the plaintiff has sufficiently pleaded that plaintiff provided a "written correspondence" under § 2605(e)(1)(B) to defendant SLS where plaintiff sent defendant SLS a letter by way of USPS registered receipt mail. (See Compl. (DE 1-1) ¶ 7). While plaintiff asserts that the modification amounts were in error, plaintiff does not allege that an account number or other identifying information was provided. (See id.).

Assuming without deciding that plaintiff's March 2020 letter constitutes a QWR under the definitional requirements of § 2605(e)(1)(B), plaintiff's RESPA claim faces a more fundamental hurdle. In <u>Poindexter v. Mercedes-Benz Credit Corp.</u>, the United States Court of Appeals for the Fourth Circuit distinguished between written requests that relate to the "servicing of the loan, i.e., the receiving or making of loan payments," on the one hand, and "the terms of the loan and mortgage documents," on the other hand. 792 F.3d 406, 414 (4th Cir. 2015).[8] Drawing on the United States Court of Appeals for the Ninth Circuit's decision in <u>Medrano v. Flagstar Bank, FSB</u>, 704 F.3d 661 (9th Cir. 2012), the <u>Poindexter</u> court adopted the reasoning in <u>Medrano</u>, which "concluded that a letter challenging the terms of the loan and mortgage documents, premised on an assertion that the existing documents did not accurately reflect the true agreement and requesting modification of those documents did not relate to servicing and thus did not trigger the servicer's RESPA obligations under § 2605(e)." <u>Id.</u> at 414–15. "[C]orrespondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications, do not qualify as QWRs." <u>Morgan</u>, 26 F.4th at 651.

On March 29, 2020, plaintiff asserts that "[p]laintiff sent [defendant] SLS a letter USPS registered receipt mail advising them the <u>modification amounts were still in miscalculation</u> and a description of the math errors [defendant SLS] had made." (Compl. (DE 1-1) ¶ 7) (emphasis added). Plaintiff's dispute with defendant SLS thus allegedly was directed at the terms of the final modification documents. <u>See</u> <u>Medrano</u>, 704 F.3d at 667 (§ 2605 "distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other."). The request for relief in

---

[8] "Servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

plaintiff's complaint is insightful. "Plaintiff by the RESPA Act and by law is owed the current miscalculated modification amount to be corrected per the Freddie Mac Flex Modification [G]uidelines from 2019, which will lower her loan amount further." (Id. ¶ 14). Plaintiff requested a remedy that RESPA does not provide. See 12 U.S.C. § 2605(f)(1).[9] "[T]he relating to component of § 2605(e) ensures that the statutory duty to respond does not arise with respect to all inquiries or complaints from borrowers to servicers." Poindexter, 792 F.3d at 413.

Further, plaintiff's March 2020 letter was sent only days after defendant SLS provided its modification offer in the final modification documents. Plaintiff allegedly signed the final modification documents on April 6, 2020. Therefore, plaintiff's March 2020 letter was provided before the final modification documents allegedly became binding and while the parties were still disputing the underlying loan modification. Plaintiff alleges no facts that either the December 2019 communication or the March 2020 letter was directed at disputed payments related to defendant SLS's servicing of the modified loan. Plaintiff's March 2020 letter was not concerned with a servicing issue, but with the ongoing contractual dispute. Thus, the March 2020 letter did not trigger defendant SLS's obligations under § 2605(e). See Morgan, 26 F.4th at 651 ("A loan modification is a contractual issue, not a servicing matter."); see also Medrano, 704 F.3d at 667 ("[W]e hold that letters challenging only a loan's validity or its terms are not [QWRs] that give rise to a duty to respond under § 2605(e).").

In addition, and the alternative, assuming plaintiff provided defendant SLS with a QWR in March 2020 related to defendant SLS's servicing of the loan, plaintiff still does not allege sufficient facts to plausibly suggest that defendant SLS violated § 2605(e)(2). Upon receipt of a QWR,

---

[9] While plaintiff's complaint disputes the monthly mortgage payment of $1,531.74, plaintiff alternatively then asks this court to enforce the terms of the final modification documents with the $1,531.74 monthly payment. (See Compl. (DE 1-1) at 8). However, this request for relief sounds in contract law, not under RESPA.

18

RESPA requires loan servicers to timely respond to a borrower's inquiries, and within thirty days provide the borrower the name and telephone number of an individual who can assist. 12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(2). In addition, servicers have three options upon receiving a QWR: 1) "make appropriate corrections in the account of the borrower, . . . and transmit to the borrower a written notification of such correction;" 2) "after conducting an investigation, provide the borrower with a written explanation or clarification that includes to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer;" or 3) "after conducting an investigation, provide the borrower with a written explanation or clarification that includes information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." Id. § 2605(e)(2). If the loan servicer fails to comply with these provisions, the statute allows for the borrower to recover actual damages. Id. § 2605(f)(1)(A).

Plaintiff alleges that following plaintiff's March 2020 letter advising defendant SLS of the allegedly incorrect mortgage payments, defendant SLS responded April 13, 2020, requesting more time to investigate plaintiff's miscalculation claims. (Compl. (DE 1-1) ¶ 9). Plaintiff does not allege that defendant SLS failed to provide the name and telephone number of an individual who could provide assistance. Nor does plaintiff allege any facts regarding defendant SLS's response following the April 13 letter. Indeed, plaintiff's § 2605(e)(2) theory rests on the assertion that defendant SLS violated RESPA by failing to correct the amount in escrow after plaintiff notified defendant SLS. (See id. ¶ 5 ("[Defendant] SLS violated the RESPA Act in their application of the Freddie Max Flex Modification [G]uidelines with their refusal to correct their miscalculation.")). But § 2605(e)(2) affords servicers three options of compliance after receiving a QWR. 12 U.S.C. §§ 2605(e)(2)(A),(B),(C); see e.g., Boardley v. Household Fin. Corp. III, 39 F.Supp.3d 689, 701

(D.Md. 2014) ("A servicer may comply with § 2605(e)(2) either by correcting the account or by explaining why it believes the account already is correct, or, if the borrower requested information rather than a correction, by providing the information or explaining why it is unable to do so.") (emphasis omitted). Plaintiff alleges that defendant SLS failed to correct the escrow amount, but plaintiff does not allege that defendant SLS failed to explain why it believed the account was already correct or failed to otherwise comply with the statute. "[A] failure to make appropriate corrections, as provided for in § 2605(e)(2)(A), is not necessarily a violation of § 2605(e)(2), as the servicer may have complied with subsection (B) or (C) instead." Boardley, 39 F.Supp.3d at 701.

For similar reasons plaintiff fails to state a claim for a RESPA violation under § 1024.35. Section 1024.35 provides that servicers must "comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). While "a notice of error" is satisfied when a borrower provides a QWR, § 1024.35 is not just limited to QWRs. Id. Section 1024.35 only applies to ten "covered errors" listed in § 1024.35(b) and a catch-all provision, which includes "any other error relating to the servicing of a borrower's mortgage loan." Id. § 1024.35(b)(11) (emphasis added). Upon notification by the borrower of a possible error, servicers must either "correct[ ] the error or errors identified by the borrower and provid[e] the borrower with a written notice of the correction . . . or conduct[ ] a reasonable investigation and provid[e] the borrower with a written notification that includes a statement that the servicer has determined that no error occurred," among other requirements. Id. § 1024.35(e)(1). Courts are split on whether borrowers have a private right of action to enforce § 1024.35. See, e.g., Lage v. Ocwen

Loan Servicing LLC, 839 F.3d 1003, 1007 (11th Cir. 2016); see also Self v. Nationstar Mortg. LLC, No. 2:19-cv-3, 2019 WL 4734412, at *10 (E.D.N.C. Sept. 26, 2019) ("Courts disagree about whether RESPA and [S]ection 1024.35 create a private right of action for alleged violations of [S]ection 1024.35.").

Assuming without deciding that borrowers may sue under § 1024.35, plaintiff is unable to state a claim for relief. Defendant SLS's alleged error, the modification miscalculation, can only fit under § 1024.35(b)(11)'s catch-all provision. However, in both the December 2019 notification and the March 2020 letter, plaintiff alleges an error related to the escrow amount included in the final modification documents. Plaintiff's assertion of error relates to the contractual dispute surrounding the terms of the modification, not to "the servicing of [the] borrower's mortgage loan." § 1024.35(b)(11). In any event, assuming that plaintiff's notice of error relates to defendant SLS's servicing of the loan, plaintiff alleges no facts that defendant SLS failed to follow one of the disjunctive options under § 1024.35(e)(1).

Lastly, plaintiff is unable to state a RESPA claim under § 1024.38 because courts agree that RESPA has not created a private right of action for alleged violations of § 1024.38. See, e.g., Best v. Newrez LLC, No. GJH-19-2331, 2020 WL 5513433, at *28 (D.Md. Sept. 11, 2020) ("[B]orrowers do not, however, have a private right of action under the Bureau's rules to enforce the requirements set forth in § 1024.38." (quoting Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,818 (Feb. 14, 2013)).

In sum, that part of plaintiff's assertion of a RESPA violation based on defendant SLS's failure to correct does not plausibly state a claim for relief under 12 U.S.C. § 2605(e) or §§ 1024.35

and 1024.38. Thus, the court grants defendant SLS's motion to dismiss plaintiff's RESPA claim against defendant SLS for failure to state a claim upon which relief can be granted.[10]

        b.    State Law Claims

The court next addresses plaintiff's claims for breach of contract and violations of the UDTPA, N.C. Gen. Stat. § 75-1.1 et seq, which are addressed in the remaining part of defendants' motions to dismiss.

Where plaintiff's claims against all defendants formed part of the same case or controversy as the federal claim alleged against defendant SLS pursuant to 12 U.S.C. §§ 2601, et seq., this court has supplemental jurisdiction to adjudicate plaintiff's state law claims. 28 U.S.C. § 1367. For purposes of § 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact" or "are such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding." Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 662 (4th Cir. 1998).

If a remedy exists in this case apart from plaintiff's RESPA claim, it exists under state law. See, e.g., Bolkhir v. N. Carolina State Univ., 321 N.C. 706, 709 (1988). "A district court may decline to exercise supplemental jurisdiction over a [pendent state law] claim if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); see also Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

---

[10]     In light of the court's ruling on defendant SLS's motion to dismiss for failure to state a claim, the court does not address defendant SLS's arguments under 12(b)(1) and 12(b)(4).

Accordingly, where plaintiff's federal claim is dismissed, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Therefore, that remaining part of defendant SLS's motion, and the motions by defendants Fay and Freddie Mac, addressing plaintiff's state law claims, are terminated as moot.

C.    Plaintiff's Remaining Motions

In light of dismissal of plaintiff's federal claim, and the court's decision to decline supplemental jurisdiction over plaintiff's state law claims, plaintiff's motion for summary judgment is premature and must be terminated as moot. See, e.g., Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (holding that a motion for summary judgment is appropriately denied where "the parties have not had an opportunity to conduct reasonable discovery.").

Plaintiff also moves to amend her complaint. A motion for leave to amend should be allowed "[i]n the absence of ... undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment[.]" Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019). Plaintiff's motion to amend, however, makes no additional showing or request to supplement plaintiff's RESPA claim, the sole claim over which this court has original jurisdiction. Therefore, plaintiff's motion to amend in this part is futile and must be denied.

Lastly, plaintiff seeks to add Bank of America and U.S. Bank as defendants to this case. In her complaint, plaintiff alleges there were various misdeeds and frauds that marred the October

2007 closing for the underlying deed of trust. Plaintiff alleges that plaintiff and another non-party individual, Daniel Felix, rejected the loan documents during the closing. (<u>See</u> Compl. (DE 1-1) ¶ 17). Plaintiff contends that plaintiff's and Mr. Felix's signatures were appended to the loan documents without their consent. (<u>Id.</u>). Plaintiff also alleges misconduct by Bank of America during successive transfers of the loan and attempts to modify the loan. (<u>Id.</u>). Where, for the reasons stated, the court declines to exercise supplemental jurisdiction over the state law claims to which plaintiff's motion to add defendants is addressed, that part of plaintiff's motion to amend is denied as futile.

## CONCLUSION

Based on the foregoing, that part of defendant SLS's motion to dismiss seeking dismissal of plaintiff's RESPA claim (DE 6) is GRANTED, and this claim is DISMISSED for failure to state a claim upon which relief may be granted. Defendants' motions in remaining part are TERMINATED AS MOOT, where lacking diversity jurisdiction the court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff's motions to remand (DE 16), for oral argument (DE 47), and to amend (DE 52), are DENIED. Plaintiff's motion for summary judgment (DE 27) is TERMINATED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 17th day of October, 2023.

LOUISE W. FLANAGAN
United States District Judge